Michael D. BRAMES, Appellant
(Defendant Below)

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 679S166.

Supreme Court of Indiana.

June 30, 1980.

John R. Wilks, Wilks & Kimbrough, Fort Wayne, for appellant.

Theodore L. Sendak, Atty. Gen., Stephen J. Cuthbert, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted of Rape in a trial to the court and was sentenced to fifteen (15) years imprisonment. Ind.Code § 35–13–4–3 (Burns 1975). This direct appeal presents the following issues:

(1) Whether the trial court erred in admitting certain items of evidence over Defendant's motion to suppress and in-trial objection.

(2) Whether the trial court erred in excluding certain testimony offered by the Defendant and pertaining to the showing of pornographic pictures at a local theatre.

(3) Whether there was sufficient evidence to support a finding that Defendant was sane, beyond a reasonable doubt, at the time the offense was committed.

(4) Whether the sentence imposed was contrary to law.

\*   \*   \*   \*   \*   \*

### ISSUE I

The evidence, when viewed in a light most favorable to the verdict disclosed that during the early morning hours of August 16, 1977, the victim, a girl of fourteen, was removed from the camp dormitory on Lake James where she was sleeping, and taken by her abductor to a nearby cottage. There, she was sexually abused. Upon her release, she informed her supervisors of the attack and the police were notified. The police, guided by the victim, travelled to the cottage some two hours after the attack. After announcing themselves, they forcibly entered the cabin and found it to be unoccupied. The victim pointed out certain items in the cabin to the police as they looked for the assailant. They then vacated the cottage, without finding him and without having taken physical possession of any evidence. After determining that the cottage was owned by the Defendant's parents, the police requested them to travel from their home in Fort Wayne, to Steuben County, where Lake James is located. They complied with the request and eventually consented in writing to a search of their cottage. This second search resulted in the seizure of many items, some of which had been pointed out by the victim during the initial search.

Prior to trial, the Defendant moved to suppress the seized items on the ground that they were the products of an unlawful search. The trial court granted the motion

in part and denied it in part. The court reasoned that the initial search did not fall within any exception to the warrant requirement, most notably, the "hot pursuit" exception. The court also correctly determined, however, that while the illegality of the first search tainted the evidence discovered during the first search, such taint did not extend to the second search, per se. Accordingly, the items pointed out by the victim to the police during the first search were suppressed and those not so identified were deemed to be admissible. The Defendant preserved the issue of admissibility as to latter group of items by a proper objection at trial.

█ The State contends that the Defendant is without standing to object to the admission of the seized items and cites our decision in *Kirkland v. State*, (1968) 249 Ind. 305, 232 N.E.2d 365, for the proposition that a Defendant may not object to the violation of a third party's constitutional rights. While this is a correct statement of the law, the Defendant's standing to object, in the situation we are here confronted with, depends upon whether he had a reasonable expectation of privacy with regard to his parents' cottage. *See Katz v. United States*, (1967) 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576; *Burton v. State*, (1973) 260 Ind. 94, 292 N.E.2d 790. The evidence demonstrates that the Defendant resided at all pertinent times with his parents in their Fort Wayne home and on occasion, in their Lake James cottage. Thus, the situation resembles that presented in *Mitchell v. State*, (1972) 259 Ind. 418, 287 N.E.2d 860. In that case, the Defendant resided with his girlfriend on a part-time basis and with his mother at other times. Despite this dual residency, we held that the Defendant had standing to object to the unreasonable search of his mother's home. *Id.* at 423, 287 N.E.2d at 863. We perceive no valid reason to deviate from that holding and decline to do so at this time.

█ Because the trial court ruled in Defendant's favor on the admissibility of the items seized as a result of the initial search, we need only determine whether the items

seized as a result of the second search were admissible. Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. However, a valid consent to search obviates that requirement. *See, e. g., Owen v. State,* (1978) Ind., 381 N.E.2d 1235; *Bruce v. State,* (1978) Ind., 375 N.E.2d 1042, *cert. den.,* 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662. Thus, two questions are posed by the facts of this case: first, was the Brames' consent effective as against the Defendant and second, was the consent itself valid.

█ *Bruce v. State,* (1978) 268 Ind. 180, 236, 375 N.E.2d 1042, 1072 is squarely on point as to the first question: " * * * The present view is that 'the consent of one who possesses common authority over premises or effects is valid as against the absent, non consenting person with whom that authority is shared.' *United States v. Matlock,* (1974) 415 U.S. 164, 170, 94 S.Ct. 988, 993, 39 L.Ed.2d 242; *United States v. Gulma,* (9th Cir. 1977) 563 F.2d 386; *United States v. Heisman,* (8th Cir. 1974) 503 F.2d 1284; *State v. Gavin,* (1977) 51 Ohio App.2d 49, 365 N.E.2d 1263; *Berner, supra.* 'Common authority' depends on 'mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the cohabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.' * * * (citations)." Accordingly the Brames' consent to the search of their cottage bound Defendant.

█ "As a rule a consent will be valid except where it was procured by fraud, duress, fear, intimidation, or where it is a mere submission to the supremacy of the law." *Muegel v. State,* (1971) 257 Ind. 146, 151, 272 N.E.2d 617, 620 (citations omitted). In the case before us, the Brames signed a consent to search form which recited that they did so voluntarily and of their own free will, without any threats, duress or coercion. Voluntariness is a question of fact to be determined from all of the circumstances. *Schneckloth v. Bustamonte,*

(1973) 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854, 875; *Bruce,* 375 N.E.2d at 1071. Moreover, there is substantial evidence that the Brames knew of their right to withhold their consent. *See Schneckloth,* 412 U.S. at 249, 93 S.Ct. at 2059, 36 L.Ed.2d at 875. Finally while the defendant contends that the police led the Brames to believe that the cottage would be searched with or without their permission, this contention is not supported by the record. The police officers testified that they told the Brames that they would seek a search warrant, if they did not consent. Thus the evidence was in conflict but amply supports a finding that the consent was voluntarily given.

The record does not reveal conduct remotely resembling conduct that would render a search invalid under standards discussed by us in *Muegel* ; thus, it was reasonable for the trial court to find that the Brames' consent was voluntary.

For these reasons, the trial court did not err in admitting those items seized as a result of the second search.

### ISSUE II

█ At trial, the Defendant offered the testimony of a part-proprietor of a local drive-in theatre which he had attended prior to the attack. It was Defendant's contention that such testimony would pertain to the contents of the films shown in August of 1977 and would bear upon the Defendant's insanity defense. However, the witness testified that she had no recollection of the films viewed by the Defendant. The State's relevancy objection was sustained and the Defendant made an offer to prove that the witness, if allowed to answer, would testify that all x-rated movies shown at that theatre graphically depicted sexual acts.

█ The rulings of a trial court on the relevancy of evidence are accorded wide latitude. *Williams v. State,* (1979) Ind., 387 N.E.2d 1317, *Barnes v. State,* (1975) 263 Ind. 320, 330 N.E.2d 743. There is no reason to constrict that latitude when a wit-

ness has no recollection of the specific matter at issue, such as in this case.

## ISSUE III

■ Defendant contends that the evidence presented at trial was insufficient to support a finding of sanity beyond a reasonable doubt. As an appellate tribunal, we will neither weigh the evidence nor determine the credibility of witnesses, but rather will examine only the evidence and the reasonable inferences therefrom which support the trial court's decision. *See Jacks v. State,* (1979) Ind., 394 N.E.2d 166; *McCoy v. State,* (1979) Ind., 393 N.E.2d 160. In the case before us, there was conflicting expert and lay testimony presented on the subject of the Defendant's sanity at the time of the offense. The ultimate decision upon the issue was for the trier of fact. It was a decision upon which reasonable minds might differ; and as such, it cannot be disturbed upon appeal.

## ISSUE IV

Defendant contends that the sentence imposed by the trial court was contrary to law for three reasons: 1) that the court was prejudiced against the Defendant due to his inability to recall the events of the night in question, 2) that the court improperly considered certain matters and 3) that the sentence was unduly harsh and severe.

■ As to whether the trial court was prejudiced against the Defendant—it is a fundamental precept of appellate review that Defendant-Appellant's argument shall contain citations to the authorities. Ind.R. App.P. 8.3(A)(7). The Defendant has provided no such citation in his argument. Moreover, the record and the totality of the circumstances indicate that neither the judgment nor the sentence was promulgated pursuant to improper motivations.

■ Defendant also contends that in sentencing him, the trial court erred in considering not only the victim's trauma, but also the putative penalties under the new criminal code. Again, Defendant cites no authority in support of his position. In non-capital offense cases, the trial court has broad discretion in sentencing. *Murphy v. State,* (1976) 265 Ind. 116, 352 N.E.2d 479. In this case, the court could have sentenced the Defendant from two to twenty-one years in prison. Ind.Code § 35–13–4–3 (Burns 1975). Exercising its discretion, the court sentenced him to fifteen (15) years. We do not view consideration of the victim's trauma and possible penalties under the new code as an abuse of that discretion.

■ Defendant's final contention is that the sentence was unduly harsh and severe. While it is true Defendant had no prior record and was only nineteen at the time of the offense, it is also true that he used a knife to secure the victim's submission, that he wounded the victim with the knife and that the victim, a girl of fourteen, had done nothing to encourage or arouse him. Additionally, the sentence was within the confines of Ind.Code § 35–13–4–3 (Burns 1975). As such, the sentence was neither manifestly unreasonable nor disproportionate to the offense.

For the foregoing reasons, we affirm the judgment below.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.