**Tyrone E. HARPER, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 1082S394.

Supreme Court of Indiana.

Feb. 22, 1985.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Robert K. Johnson, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Following a trial by jury, Defendant (Appellant) was convicted of Rape, a class A felony, Ind.Code § 35-42-4-1 (Burns 1979), Resisting Law Enforcement, a class D felony, Ind.Code § 35-44-3-3 (Burns 1979), and was found to be an habitual offender, Ind. Code § 35-50-2-8 (Burns Supp.1984). He was sentenced to a term of imprisonment of seventy (70) years upon the rape conviction, the forty year sentence for the rape having been enhanced by thirty (30) years upon the habitual offender finding, and to a concurrent three year sentence for resisting law enforcement. His direct appeal presents five (5) issues for our review, as follows:

(1) Whether the trial court erred in denying the Defendant's motion for mistrial predicated upon his claim that, during the State's final argument, the deputy prosecutor made an impermissible comment on his failure to testify;

(2) Whether the evidence was sufficient to sustain the rape conviction;

(3) Whether State's exhibits numbers 9, 10, 11, 12, and 13 were the products of an illegal search and seizure;

(4) Whether the trial court erred in admitting into evidence State's exhibits numbers 2, 5, 8A, 8B, 8C and 15 over Defendant's objection that they were irrelevant and served only to prejudice the jury against him;

(5) Whether the verdict finding him to be an habitual offender is contrary to law.

The record discloses that on October 19, 1981, P.C., the Defendant's nineteen (19) year old step-daughter, informed her moth-

er and the Defendant, who had been living with them for a few weeks, that her boyfriend had asked her to marry him and that the two of them were planning to leave together that evening to take a trip. P.C.'s boyfriend, however, never arrived, and P.C. went to bed, still dressed in her clothing, at approximately 4:00 a.m. on October 20, 1981. When P.C. awakened the next morning, her mother had already gone to work, but she found the Defendant in the kitchen looking through the telephone book. He told P.C. that he was going to call her boyfriend and tell him that she was not going to marry him because he (the boyfriend) thought she was not a virgin. P.C. told the Defendant that this was none of his business, became upset, and went into her bedroom and cried. The Defendant followed her into the bedroom where he suggested that she lose her virginity with someone else for her boyfriend. She said no. The Defendant then showed her a passage in the Bible relating a story concerning two daughters who had gone to bed with their father. The Defendant said, "let me put it in you," and P.C. again refused. She told him that he was "crazy." He then told her that it was time that she became a woman and told her that she was going to do it and get it over with.

P.C. tried to leave the room, but the Defendant would not let her do so. He grabbed her, threw her on the bed, and hit her in the face four or five times. When P.C. fought back, the Defendant grabbed her throat, choked her, and threatened to kill her. P.C. testified that she then acceded to his demands because she feared for her life and that the Defendant ultimately penetrated her vagina. When P.C. discovered that she was bleeding, the Defendant told her to take a bath. He removed the sheet from her bed and put it into the washing machine.

P.C. lay in bed for the next several hours, but after the Defendant came into her room and asked her not to tell her mother and told her that he was leaving, she dressed and ran to a neighbor's home. The neighbor took her to the hospital and called the police.

The police obtained a description of the Defendant and of the automobile he might be driving from the victim and gave such information to the police dispatcher. At approximately 10:30 p.m., two officers saw a car and driver matching the descriptions which had been dispatched, but when the officers attempted to stop the automobile, it sped away with the officers in pursuit. After a lengthy, high-speed chase, the Defendant's automobile struck another vehicle, and the police apprehended the Defendant. The driver of the car which Defendant's vehicle had struck suffered considerable pain in his back and was treated by physical therapists.

## ISSUE I

During the State's closing final argument, the deputy prosecutor stated,

"So what do they do, they've got love and resentment and jealousy, and that all adds up to a nineteen year old virgin wanting to go to bed with her stepfather. It's quite a step, quite a step, you know, you'd think there would be some expert testimony available for that from psychologists, psychiatrists. No, you just had Mr. Combs [defense counsel] tell you that. The only person who testified who said that the act was consensual was Mr. Combs, and he wasn't there, was he?"

Defendant argues that his motion for mistrial should have been granted in that the above statement constituted an impermissible comment upon his failure to testify in violation of the Fifth Amendment and Ind.Code § 35–1–31–3 (Burns 1979, repealed effective September 1, 1982). Any comment which is subject to interpretation as a comment upon an accused's failure to testify is prohibited. *Griffin v. California,* (1965) 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106; *Mayes v. State,* (1984) Ind., 467 N.E.2d 1189, 1196, and cases cited therein.

The deputy prosecutor's comment followed defense counsel's closing argument in which he stated that P.C. had will-

ingly engaged in intercourse with her stepfather because she loved him "in a sexual, romantic way" and felt "jilted, rejected, humiliated [and] embarrassed" because her boyfriend had not met her as he had promised. Thus, the defense attorney argued, "she wanted and she needed an expression of love and to express love." He further claimed that P.C. was jealous of her mother's relationship with the Defendant.

Although we find that the deputy prosecutor's statement was close to the line of impropriety, considering the fact that only two people could testify as to whether the act was or was not consensual and one of them (the victim) had testified; we, nevertheless, find that in its totality, the comment appears to have been addressed not to Defendant's failure to testify but rather to his failure to present any evidence to substantiate his claims that the victim was emotionally unbalanced and had not only consented to but had encouraged the Defendant's carnal attentions.

The trial court obviously did not view the statement as a comment on Defendant's failure to testify and, further, gave a standard instruction stating that the Defendant was not required to present any evidence to prove his innocence or to prove or explain anything. Defendant was not entitled to a mistrial.

### ISSUE II

■ Defendant's challenge to the sufficiency of the evidence is addressed to the question of whether the State proved that the rape was committed "by using or threatening the use of deadly force," thus elevating the crime to a class A felony.

P.C. testified that the Defendant refused to let her leave her bedroom, that he grabbed her arm and threw her onto the bed, and that he pushed her down and hit her in the face with his first four or five times. When P.C. hit the Defendant, he put his hands to her throat and choked her for from ten to thirty seconds and told her that he was going to kill her. He then hit her again to get her to remove her blouse. The doctor who examined her testified that

P.C. had a small bruise over her left eye and a mild swelling over her left cheek. P.C. told the doctor that her neck hurt when he palpated it.

In *Smith v. State*, (1983) Ind., 455 N.E.2d 606, 609, this Court found the evidence sufficient to prove that the appellant threatened the use of deadly force when he threw the victim on her back, put his hand over her mouth and nose, making breathing difficult, and told her, "Shut up or I'm going to kill you." In *Calbert v. State*, (1981) 275 Ind. 595, 418 N.E.2d 1158, 1160, the victim was thrown to the floor, sat upon, bitten and repeatedly slapped while being told by her assailant that he would kill her. Again, we found the evidence sufficient to sustain the conviction of a class A felony.

Similarly, we find Defendant's verbal threat to kill P.C. made while he was hitting and choking her sufficient to sustain the conviction of rape as a class A felony.

### ISSUE III

State's exhibit number 9 was a washcloth taken from the victim's bathroom; number 10 was the victim's panties; number 11 was a towel from the master bedroom; number 12 was a washcloth from the master bedroom; and number 13 was the victim's blouse. Defendant sought to have these exhibits suppressed because, he argued, they were the products of an illegal search and seizure. Following a hearing on the motion, the trial court found that consent to the search had been given and accordingly denied the motion to suppress. We agree with the ruling of the trial court.

Johnson County Sheriff's Detective Michael McElwain testified that he accompanied P.C. to her home at approximately 6:00 p.m. on October 20, 1981. Two other police officers arrived at the home a few minutes later. McElwain had neither an arrest warrant for the Defendant nor a warrant to search the residence. P.C. did not have a key to the house, but shortly after she and the officers arrived, Mrs. Harper came home and gave permission for the officers

to enter the house. P.C. then led Officer McElwain to her bedroom to show him where the crime had taken place, and as she accompanied him he gathered the items of evidence described above and placed them in paper bags provided by Mrs. Harper.

■ As a general rule, a search may only be conducted pursuant to a lawful warrant authorizing the search; however, one of the exceptions obviating the necessity of a warrant is a valid consent. *Brames v. State*, (1980) 273 Ind. 565, 568, 406 N.E.2d 252, 255; *Hill v. State*, (1978) 267 Ind. 480, 487, 371 N.E.2d 1303, 1307. Defendant does not argue that P.C. did not give Officer McElwain permission to search the premises or to take her personal items; rather, he argues that Mrs. Harper never consented to the search.

■ The record discloses that Officer McElwain could not remember whether he had asked Mrs. Harper's permission to search the house or whether she had verbally assented to the search. Mrs. Harper, however, was present during the search and even assisted therein by finding paper bags in which to place the items seized. In view of Mrs. Harper's presence, acquiescence, and assistance in the search, we find that it was made with her consent and that there was, therefore, no error in admitting the items into evidence. In *Brames*, we wrote:

"The present view is that 'the consent of one who possesses common authority over premises or effects is valid as against the absent nonconsenting person with whom that authority is shared.' (citations omitted) 'Common authority' depends on 'mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the cohabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.' " (citations omitted).

*Brames v. State*, 273 Ind. at 568–569, 406 N.E.2d at 255.

## ISSUE IV

■ State's exhibits numbers 8A, 8B, and 8C consisted of tissue or bodily secretion samples taken from P.C. at the time of her examination at the hospital, placed in a rape kit, and subsequently analyzed by William Kuhn, a Forensic Serologist employed at the Indiana State Police Laboratory. We find that Defendant has failed to preserve error in the admission into evidence of these items inasmuch as he made no objection to their admission at trial.

State's exhibit number 2 consisted of a standard reporting form which the examining doctor of a rape victim completes. Dr. Robert Furbee testified that he had prepared the report and had signed it immediately after he examined P.C. State's exhibit number 5 was the medical report which Dr. Furbee had dictated following his examination of P.C. State's exhibit number 15 was the serologist's report which summarized the results of the various tests and examinations conducted on the evidence submitted to him in connection with the case at bar.

■ Defendant objected to the admission into evidence of these exhibits, arguing that they were merely cumulative of testimony given by Dr. Furbee and Kuhn and were calculated to unfairly prejudice the jury. The admission or rejection of cumulative evidence lies within the sound discretion of the trial court, and its ruling thereon will not be set aside unless a clear abuse of that discretion is shown. *Davis v. State*, (1983) Ind., 456 N.E.2d 405, 409. In *Davis*, an autopsy report was admitted into evidence over appellant's claim that it was merely cumulative of the testimony of the doctor who conducted the autopsy. We found no abuse of discretion in admitting the report. Similarly, we find no abuse of discretion in the ruling of the trial court in the case at bar.

ISSUE V

In an habitual offender proceeding, the burden of proving that the defendant has been pardoned or that a conviction has been set aside is on the defendant. *Havens v. State*, (1981) Ind., 429 N.E.2d 618, 622; *Williams v. State*, (1981) Ind., 424 N.E.2d 1017, 1018. Defendant's contention that the lack of knowledge by two State's witnesses of whether or not he had been pardoned or whether or not his previous convictions had been set aside meets this burden has absolutely no merit.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PIVARNIK, JJ., concur.