Kathy P. MELTON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 16A04–9809–CR–446.

Court of Appeals of Indiana.

Feb. 16, 1999.

Michael L. Rogers, Rogers & Dove, North Vernon, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, J. T. Whitehead, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

GARRARD, Judge

### Case Summary

Kathy Melton was charged with possession of marijuana, possession of cocaine, and dealing in marijuana after a police search of her home uncovered marijuana and crack cocaine. Melton filed a motion to suppress the evidence on grounds that the search was unconstitutional. The trial court denied Melton's motion and she filed an interlocutory appeal. We affirm the trial court's decision.

### Issues

I. Whether the trial court erred in denying Melton's motion to suppress evidence where the State conducted a search of Melton's home, with her consent, but did not inform Melton of her right to counsel.

II. Whether Melton voluntarily consented to the search of her home and, if so,

III. Whether the scope of Melton's consent extended to the entire search conducted.

### Facts and Procedural History

Officer Terry Nickell and Officer Pete Tressler went to Kathy Melton's home after receiving an anonymous tip that Melton and her husband had drugs there. When they arrived, Melton answered the door and allowed the officers to enter. After speaking with Melton for a moment, while she was sitting at her kitchen table, the officers asked her if they could search the home. Melton stood up from the table and responded "where do you want to begin?" Record at 55. The officers then searched Melton's son's bedroom and her bedroom, eventually finding marijuana in Melton's bedroom. They later searched her purse and found cocaine. Melton was charged with dealing in marijuana, a class C felony, possession of marijuana, a class D felony, and possession of cocaine, a class D felony. Melton filed a motion to suppress with the trial court, which it denied. Additional facts will be presented as necessary.

### Discussion and Decision

■ Melton contends that the trial court's decision to deny her motion to suppress is in error and violates both the Fourth Amendment to the U.S. Constitution and Article I, Section 11 of the Indiana Constitution. Both of these provisions provide "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV; IND. CONST., art. I, § 11. We initially note our standard of review when reviewing a trial court's ruling on the validity of a search and seizure: we consider the evidence most favorable to the ruling and any uncontradicted evidence to the contrary to determine whether there is sufficient evidence to support the ruling. *Haley v. State*, 696 N.E.2d 98, 101 (Ind.Ct.App.1998), *trans. denied*. If the evidence is conflicting, we consider only the evidence favorable to the ruling and will affirm if the ruling is supported by substantial evidence of probative value. *Id.*

■ Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. In cases involving a warrantless search, the State bears the burden of proving an exception to the warrant requirement. *State v. Farber*, 677 N.E.2d 1111, 1116 (Ind.Ct.App.1997), *trans. denied*. A valid consent to search is an exception to the warrant requirement. *Id.* The theory underlying this exception is that, when an individual gives the State permission to search either his person or property, the governmental intrusion is presumably reasonable. *See Jones v. State*, 655 N.E.2d 49, 54 (Ind.1995).

### I. Advisement of Right to Counsel

■ Melton first contends that she should have been advised of her right to counsel before consenting to a search. Our supreme court has stated that a person in custody must be informed of the right to consult with counsel about the possibility of consenting to a search before a valid consent to a search can be given. *Id.; Sims v. State*, 274 Ind. 495, 413 N.E.2d 556 (Ind.1980). Because Melton claims that she was entitled to receive a warning about consultation with counsel before consenting to a search, we must first determine whether her right to receive the warning had attached. This right can only be said to have attached if Melton was in custody when she consented to the search.

■ Neither federal nor Indiana constitutional jurisprudence has developed a "bright line" test for determining when someone has been subjected to a custodial interrogation. The rule for this determination asks whether a reasonable person in the same circumstances would believe that she is under arrest or not free "to resist the entreaties of the police." *Jones*, 655 N.E.2d at 55 (quoting *Florida v. Bostick*, 501 U.S. 429, 433–34, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991)). For example, in *Pirtle v. State*, 263 Ind. 16, 323 N.E.2d 634 (1975), our supreme court held that the defendant was in custody when asked for consent to search his home where the defendant was in jail and had been detained for more than twelve hours. *Pirtle*, 323 N.E.2d at 637. Generally, in cases where courts have held that a defendant was in custody implicating *Miranda* requirements, the facts have demonstrated "a degree associated with formal arrest." *Bishop*

*v. State,* 700 N.E.2d 473, 476 (Ind.Ct.App. 1998).

■ Here, Melton allowed the police officers to enter her home. She then led them into the kitchen where they questioned her. When asked whether they could search her home, Melton asked the officers "where [they] wanted to start" and led them around the house. Record at 25. The officers informed her several times that she was not under arrest and Melton did not ask the officers to leave. Although Melton testified that she felt intimidated, her subjective belief is not controlling, as we employ an objective standard. The facts do not demonstrate that Melton was in police custody during the investigation and search. Therefore, it was not necessary for the officers to advise Melton of a right to consult with counsel before obtaining a valid consent to search.

## II. Validity of Consent to Search

■ Next, Melton contends that her consent to search was not valid. A valid consent to search is an exception to the warrant requirement unless it is procured by fraud, duress, fear, or intimidation, or where it is "merely a submission to the supremacy of the law." *Farber,* 677 N.E.2d at 1116. In determining whether consent was valid, we must consider the totality of the circumstances. *Weaver v. State,* 556 N.E.2d 1386, 1389 (Ind.Ct.App.1990), *trans. denied.* The record discloses that the police received an anonymous tip that Melton and her husband had a large quantity of marijuana and crack cocaine in their home. Believing that they lacked probable cause to obtain a search warrant, the police went to Melton's home to question her. The officers asked Melton if they could enter her home and she allowed them to enter, taking them into the kitchen to talk. According to Officer Nickell, when they asked Melton whether they could search her home she "said all right, and she got up, she stood up and walked around the table . . . and she came around to my right and she said all right and asked me where I wanted to start." Record at 25. Nickell then told Melton that "she doesn't have to let us search, but . . . normally, the parents do cooperate with us." Record at 26. The officers then searched Melton's son's bedroom and found no contraband. After searching the first bedroom "[Melton] asked where next, and [Nickell] said I'd like to start with her [Melton's] room and then [Melton] led [Nickell] into her room." Record at 27. In Melton's bedroom the officers found several bags of marijuana.

During the visit, the officers told Melton several times that she was not under arrest. At no point during the search did Melton ask the officers to stop searching. Moreover, Melton assisted in the search, opening dresser drawers and moving items within the drawers at the officers' request. The officers also informed Melton before the search that they were there because they had received a report regarding marijuana. Melton contends that she was intimidated and felt that she could not leave her home or refuse the search. However, her contentions do not outweigh the substantial evidence of voluntariness presented. Thus, it was reasonable for the trial court to find that Melton's consent was voluntary.

## III. Scope of Search

■ Lastly, Melton contends that, even if her consent to search were voluntary, she consented only to a search of her son's room and did not consent to a search of the rest of her home. The scope of authority to search is strictly limited to the consent given. Therefore, a consent search is reasonable only if it is kept within the boundaries of the consent. *Covelli v. State,* 579 N.E.2d 466, 472 (Ind.Ct.App.1991), *trans. denied.*

■ Following the search of Melton's son's bedroom, Officer Nickell and Melton stepped outside of the bedroom at which time Melton asked the officer "where next?" Record at 27. Officer Nickell then stated that he would like to search Melton's room and she led him to it. While in the bedroom, Melton stood right next to Nickell as he searched the dresser drawers where the marijuana was found. Although Melton did not explicitly tell the officers that they could search the entire house, such express consent is not a requirement for a valid consent search. *State v. Jorgensen,* 526 N.E.2d 1004, 1006 (Ind.Ct.App.1988). "The circumstances sur-

rounding the search may demonstrate that the party involved implicitly gave consent, by word or deed." *Id.* For example, in *Harper v. State*, 474 N.E.2d 508, 512 (Ind.1985), the officer conducting a warrantless search of the defendant's home could not remember whether the defendant's spouse gave verbal consent to the search. *Harper*, 474 N.E.2d at 512. On appeal, our supreme court upheld the trial court's decision that the search was consensual because the wife was present during the search and acquiesced in it. *Id.*[1] Similarly, here, Melton acquiesced in the search of her bedroom and the State did not step outside of the bounds of her consent. Therefore, the trial court did not err in denying her motion to suppress.

Affirmed.

BAKER, J. concurs.

ROBB, J. concurs and files separate opinion.

ROBB, J., concurring

Although I agree with the outcome of the majority's decision, I write separately to note that the conduct of the police in this case is very troubling. Based on my reading of the record, the officers feigned concern for the welfare of Melton's son as subterfuge to gain access to Melton's home. According to Melton, the officers stated that they were on a welfare check for her son, and she feared that the officers would take custody of him if she refused to consent to the search. As is well recognized in Fourth Amendment jurisprudence, consent procured by fraud, duress, fear, or intimidation is not sufficient to uphold a warrantless search. *Darnell v. State*, 435 N.E.2d 250, 254 (Ind.1982); *Muegel v. State*, 257 Ind. 146, 272 N.E.2d 617, 620 (1971). Nevertheless, the police officers testified that they specifically asked Melton's permission to search her home for drugs. As stated in the majority opinion, Melton acquiesced and even helped the officers during their search. The officers also denied Melton's accusations that they claimed to be on a welfare check; moreover, the officers testified that their comments regarding Mel-

ton's son were based on a genuine concern for his welfare. We cannot reweigh the evidence or judge the credibility of witnesses in this regard. Thus, in spite of my misgivings regarding the officers' conduct, I concur with the majority that Melton's consent was sufficient to uphold the warrantless search of her residence.

---

1. We emphasize, however, that the failure to protest a search does not, in itself, constitute consent. *Snyder v. State*, 538 N.E.2d 961, 964 (Ind.Ct.App.1989), *trans. denied.*