**Steven NOWLING, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 31A01–1010–CR–552.**

Court of Appeals of Indiana.

Oct. 24, 2011.

Matthew J. McGovern, Evansville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

Steven Nowling appeals his conviction for possession of methamphetamine as a class D felony.[1] Nowling raises two issues, which we revise and restate as:

I.  Whether the trial court abused its discretion by admitting certain evidence; and

II. Whether the trial court erred in admitting evidence of Nowling's statements made to his probation officer.

We affirm.

The relevant facts follow. Nowling was on probation for two offenses. A written condition of probation was that: "[Y]our person, vehicle, home and all your property of any kind is subject to search and seizure. Any search or seizure procedures shall be conducted by the probation officer and/or his or her authorized agent and shall be reasonable under the circumstances." Transcript at 63. Nowling's probation officer, Jeff Skaggs, referred

him to intensive outpatient drug and alcohol counseling, which he completed on January 21, 2010. In his discharge summary dated January 25, 2010, the counselor noted that Nowling "lives in la-la land," which Skaggs believed meant that Nowling was "not being honest with [himself] about what's going on ... with [his] use or [his] amount of control [he has] to abstain" from using drugs, and the counselor recommended close supervision including home visits during evening hours. *Id.* at 89. The counselor also recommended that Nowling continue to abstain from drugs and alcohol. After Nowling's discharge from treatment, Skaggs performed a risk assessment and determined that Nowling was a "high risk." *Id.* at 94.

On February 26, 2010, Skaggs, accompanied by Indiana State Troopers Katrina Smith and Jackie Smith, whom Skaggs referred to as his "authorized agents," conducted a home visit at a home owned by James Zimmerman, at which Nowling had resided with Zimmerman and Zimmerman's daughter Gail Rikard, who was also Nowling's fiancée, for about twelve years pursuant to an arrangement in which Rikard and Nowling helped take care of Zimmerman and run the household. *Id.* at 57. Trooper Jackie Smith was in full uniform and armed, and Trooper Katrina Smith was dressed in plain clothes and also armed. Upon arriving at the residence, they were greeted at the door by Zimmerman who asked them "to come in." *Id.* at 120. Zimmerman informed Skaggs and the troopers that Nowling was not home but that he would be home shortly. Skaggs asked Zimmerman where Nowling's bedroom was, and Zimmerman replied that it was upstairs and "directed [Skaggs and the troopers] to the staircase." *Id.* at 138. Skaggs and Trooper Katrina Smith then proceeded upstairs.

---

1. Ind.Code § 35–48–4–6.1 (Supp.2006).

Neither Skaggs nor the troopers asked Zimmerman for permission to search the home.

Upon entering Nowling's bedroom, Trooper Katrina Smith and Skaggs noticed drug paraphernalia, including a white pen hull containing white powder, a plastic baggie with white residue in it, and aluminum foil sitting on a table. Trooper Katrina Smith also found an unloaded handgun in a dresser drawer.

A short time later, Nowling arrived home, and, while Trooper Katrina Smith remained in the bedroom, Skaggs, in the presence of Trooper Jackie Smith, met Nowling on the first floor of the house and asked him if there was "anything . . . there that we needed to know. . . ." *Id.* at 58. Skaggs then went back upstairs with Nowling and proceeded to ask him about the items found in his room. At that point, according to Trooper Katrina Smith, Nowling was "detained," but he had not been handcuffed and it had not been decided whether he would be taken to jail. *Id.* at 112. Nowling claimed that the drug paraphernalia in his room was old and "had been there for a while," but admitted that he had used methamphetamine earlier that day. *Id.* at 62. Test results later revealed that the white powder on the pen hull consisted of both cocaine and methamphetamine and the baggie contained cocaine residue.

On April 8, 2010, the State charged Nowling with possession of cocaine as a class D felony, possession of cocaine while in possession of a firearm as a class C felony, and possession of methamphetamine while in possession of a firearm as a class C felony. At the outset of the jury trial, Nowling moved to suppress the drug paraphernalia and any statements made by Nowling to Skaggs. The court held a hearing on the motions, but ultimately denied them. The trial proceeded with the presentation of the evidence and Nowling objected to the introduction of the physical evidence and the statements made on the day of the search.

During the trial, Skaggs testified that Nowling admitted in court on August 16, 2010 that he possessed drug paraphernalia on the day of the search in violation of his probation. Skaggs also testified that he had no evidence that Nowling was using illicit substances when he decided to conduct the home visit and was simply following protocol as his position requires. Rikard testified that the handgun recovered from Nowling's bedroom belonged to her.

On September 16, 2010, Nowling was found guilty of the lesser-included offense of possession of methamphetamine as a class D felony and not guilty of possession of cocaine while in possession of a firearm as a class C felony. The court declared a mistrial as to the count of possession of cocaine as a class D felony and ultimately dismissed the count without prejudice upon request of the parties. The court sentenced Nowling to two-and-a-half years in the Department of Correction.

The issue is whether the trial court abused its discretion by admitting certain evidence. The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for abuse of discretion. *Wilson v. State,* 765 N.E.2d 1265, 1272 (Ind.2002). An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances" before the court. *Smith v. State,* 754 N.E.2d 502, 504 (Ind.2001). In making this determination, this court does not reweigh evidence and considers conflicting evidence in a light most favorable to the trial court's ruling. *Cole v. State,* 878 N.E.2d 882, 885 (Ind.Ct.App.2007). However, we must also consider the uncontested evidence favorable to the defen-

dant. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind.1997), *reh'g denied.* Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Id.* Further, this court considers evidence from the trial as well as evidence from the suppression hearing that is not in direct conflict with the trial evidence. *Kelley v. State*, 825 N.E.2d 420, 427 (Ind.Ct.App.2005).

Nowling argues that the search was illegal under the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution. We begin by addressing Nowling's Fourth Amendment claims. The Fourth Amendment to the United States Constitution provides, in pertinent part: "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. CONST. amend. IV. The Fourth Amendment's protection against unreasonable searches and seizures has been extended to the states through the Fourteenth Amendment. See *Berry v. State*, 704 N.E.2d 462, 464–465 (Ind.1998). Generally, searches should be conducted pursuant to a warrant supported by probable cause. *Purdy v. State*, 708 N.E.2d 20, 22 (Ind.Ct.App.1999). As a general rule, warrantless searches and seizures inside the home are presumptively unreasonable. *Primus v. State*, 813 N.E.2d 370, 374 (Ind.Ct.App.2004). Consequently, when a search is conducted without a warrant, the State has the burden of proving that the search falls into one of the exceptions to the warrant requirement. *Berry*, 704 N.E.2d at 465. Two such exceptions include: (A) the "special needs" associated with the State's operation of its probation system; and (B) consent.

**A. Special Needs of Probation System**

Nowling argues that "[w]hen a probationer agrees to a condition of probation which allows the State to search his home, any subsequent search must be supported by a 'reasonable suspicion,'" but that the evidence adduced at trial "fails to establish a 'reasonable suspicion' to search [his] room." Appellant's Brief at 9, 12. Nowling argues that Skaggs "equated the recommendation for a 'home visit' with 'a search of the residence,'" that "based upon this ... alone, [Skaggs] decided to visit and search [the] home without a warrant," and that Skaggs "admitted that he had no other evidence that [Nowling] was using illicit substances." *Id.* at 12. Nowling argues that he "was not at home when the search began, so there is no evidence that [his] behavior prompted the search." *Id.* Nowling also notes that the discharge summary prepared by the counselor noted that he "should continue to abstain," which was "a clear indication that the counselor thought that [Nowling] was not currently using drugs or alcohol." *Id.* at 13 (internal quotation omitted). Lastly, Nowling argues that the State relies upon the remark by the counselor that he "lives in la-la land," which is "an ambiguous, nonspecific reference and does not indicate that [he] has committed or was about to commit a crime." *Id.*

"[T]he United States Supreme Court has determined that '[a] State's operation of a probation system ... presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements.'" *Micheau v. State*, 893 N.E.2d 1053, 1059 (Ind.Ct.App.2008) (quoting *Allen v. State*, 743 N.E.2d 1222, 1227 (Ind.Ct.App.2001) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 873–74, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987)), *reh'g denied, trans. denied*), *trans. denied.* The Court held that these "'special needs' ... justified warrantless searches based on reasonable suspicion rather than probable cause."

*State v. Schlechty,* 926 N.E.2d 1, 3–4 (Ind. 2010) (citing *Griffin,* 483 U.S. at 875, 107 S.Ct. 3164), *reh'g denied, cert. denied,* —— U.S. ——, 131 S.Ct. 934, 178 L.Ed.2d 776 (2011). *Id.* The Indiana Supreme Court, in examining *Griffin,* noted that whether the reasonableness requirement was established by statute or "by narrowly tailored restrictions included within a probation agreement," warrantless probation searches "may be justified on the basis of reasonable suspicion to believe a probation violation has occurred because, among other things, supervision of probationers is necessary to ensure that probation restrictions are in fact observed, and that the community is not harmed by the probationer being at large." [2] *Id.* at 4, 6.

**2.** We note that the Court in *Schlechty* also examined *United States v. Knights,* 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001), in which the United States Supreme Court "expanded its holding in *Griffin* by declaring that searches performed in compliance with a search provision contained within a valid probation agreement may be constitutional even if they were not 'conducted by a probation officer monitoring whether the probationer is complying with probation restrictions.'" 926 N.E.2d at 4. In *Knights,* the probationer's apartment was searched by a police detective without a warrant following "several acts of vandalism and arson" against a company which had recently "filed a complaint for theft of services" against the probationer and had terminated the probationer's employment. *Id.* at 4 n. 3. The probationer had agreed to a condition of probation which "provided for police access to his 'person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant for arrest or reasonable cause by any probation officer or law enforcement officer.'" *Id.* at 5. The issue as stated by the United States Supreme Court was "whether the Fourth Amendment limits searches pursuant to [Knights's probation condition] to those with a 'probationary' purpose." *Knights,* 534 U.S. at 116, 122 S.Ct. at 590. The Court held, as stated by the *Schlechty* Court, that "even if there is no probationary purpose at stake, a warrantless search may be justified on the basis of reasonable suspicion to believe that the probationer has engaged in criminal activity and that a search condition is one of the terms of probation," *Schlechty,* 926 N.E.2d at 6, and it based its rationale on its "general Fourth Amendment approach of 'examining the totality of the circumstances,' with the probation search condition being a salient circumstance." *Knights,* 534 U.S. at 118, 122 S.Ct. at 591 (citation omitted).

Under the circumstances of this case, which clearly involved a probationary search and in which there is no evidence that criminal activity had occurred prior to the search of Nowling's bedroom, we need not examine whether the search was justified under the *Knights* test. Also, we need not address at this time the question of whether the *Knights* test would apply to a probationer such as Nowling where the search provision in the probation agreement provides explicitly that a search "shall be conducted by the probation officer and/or his or her authorized agent" and does not include law enforcement officers generally. Transcript at 63.

Finally, we also note that, to the extent that recent cases from this court state that "[w]hen a search is not conducted within the regulatory scheme of probation enforcement, a probationer's normal privacy rights cannot be stripped from him," that "[t]he State must demonstrate that a warrantless search of a probationer was a true probationary search and not an investigatory search," and that "[a] probation search cannot be a mere subterfuge enabling the police to avoid obtaining a search warrant," and setting forth a "bifurcated inquiry," in which a court should first "determine whether the search was indeed a parole or probation search," and, if it is determined that the search was "not conducted within the regulatory scheme of parole/probation enforcement, then it will be subject to the usual requirement that a warrant supported by probable cause be obtained," such statements appear to conflict with the Indiana Supreme Court's examination of *Knights* in *Schlechty. See, e.g., Allen,* 743 N.E.2d at 1227–1228. Indeed, the authority for these statements can be ultimately traced back to *United States v. Ooley,* 116 F.3d 370, 372 (9th Cir.1997), *cert. denied,* 524 U.S. 963, 118 S.Ct. 2391, 141 L.Ed.2d 756 (1998), a case which was overruled by *Knights. See, e.g., U.S. v. Stokes,* 292 F.3d 964, 967 (9th Cir.2002) (noting that the United States Supreme Court in

In *Schlechty*, defendant Schlechty's car was subjected to a warrantless search by a probation officer with the assistance of two other law enforcement officers following a report "that Schlechty was driving his car around a neighborhood: attempting to 'pick up' a thirteen-year-old girl as she was on her way to a school bus stop. . . ." *Id.* at 2. The search "revealed a green leafy substance, later identified as marijuana, along with drug paraphernalia." *Id.* The trial court granted Schlechty's motion to suppress the evidence seized in the search, noting that there was no evidence presented to demonstrate that "there was reasonable suspicion that a search of [his] vehicle was necessary under the regulatory scheme of probation enforcement." *Id.* at 2–3.

In reversing the trial court and concluding that the warrantless search of Schlechty's car comported with the dictates of the Fourth Amendment, the Court discussed how the trial court "conflated" the distinct legal concepts of " 'reasonableness' of the search under the Fourth Amendment" and " 'reasonable suspicion' to support the search," and it indicated that, although a search may be "reasonable," it still may not have been based upon "reasonable suspicion." *Id.* at 6–7. First, the Court noted that "all government searches, whether or not conducted pursuant to voluntary consent, must be 'reasonable,' " and that "the Fourth Amendment would not condone the indiscriminate ransacking of a probationer's home at all hours, or the pumping of his or her stomach, simply because a probation term included a search condition." *Id.* Reasonable suspicion, by contrast, "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, but it still requires at least a minimal level of objective justification and more than an inchoate and unparticularized suspicion or 'hunch' of criminal activity." *Id.* at 7. In evaluating reasonable suspicion, we are to measure "an officer's subjective motivation for a search . . . against an objective standard of reasonableness." *Id.* The Court held that "[t]he warrantless search of Schlechty's car was supported both by reasonable suspicion to believe that Schlechty engaged in criminal activity [3] and a search condition contained in his terms of probation. Also, the search itself was not conducted unreasonably." *Id.* at 8.

■ Turning to this case, we note that although we review a trial court's decision to admit evidence under an abuse of discretion standard, "the ultimate determination of reasonable suspicion is reviewed *de novo*." *Burkett v. State*, 736 N.E.2d 304, 306 (Ind.Ct.App.2000) (quoting *Green v. State*, 719 N.E.2d 426, 429 (Ind.Ct.App. 1999) (citing *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996))). The facts most favorable to the conviction reveal that Nowling was discharged from an outpatient drug and alcohol counseling service in January 2010, and in the discharge summary the counselor noted that Nowling "lives in

---

*Knights* overruled *Ooley* and other cases holding that "searches of probationers [as being] invalid on the ground that they were subterfuges for criminal investigations"), *cert. denied*, 537 U.S. 964, 123 S.Ct. 398, 154 L.Ed.2d 321 (2002).

3.  In finding reasonable suspicion, the Court noted:
    The record shows that as reported by the thirteen-year old alleged and potential vic-

tim, Schlechty's conduct implicated at least two possible criminal offenses: stalking, and attempted confinement. Thus, viewed objectively, the officers had reasonable suspicion to believe criminal activity had occurred even though their subjective states of mind may have suggested otherwise.
926 N.E.2d at 8 (footnotes omitted).

la-la land" and recommended close supervision and home visitation, including during evening hours. Transcript at 89. Nowling's risk assessment showed him to be "high risk." *Id.* at 94. Based upon these assessments, Skaggs and two troopers went to Nowling's home. Upon their arrival, Zimmerman answered the door and informed them that Nowling was not home but would be back shortly. After Zimmerman allowed them inside, Skaggs and Trooper Katrina Smith proceeded upstairs and searched Nowling's bedroom.

Based upon the facts before us, we find that Skaggs and the troopers did not have reasonable suspicion to believe that a probation violation had occurred. Viewed objectively, we can identify nothing in the record indicating that Nowling had been using drugs or had otherwise violated his probation, and we find that the bases cited by the State constitute nothing more than a "hunch." Indeed, were we to find that Nowling's status as a high-risk probationer and the vague statement that he "lives in la-la land" as being sufficiently particularized to support a finding of reasonable suspicion, such a determination would eviscerate the minimal Fourth Amendment privacy guarantees that *Schlechty* and *Griffin* afford Nowling and similarly-situated probationers. Thus, we conclude that the decision to enter and search Nowling's bedroom was not supported by reasonable suspicion. *Cf. Allen*, 743 N.E.2d at 1229 ("When the police told [the probation officer] that Allen had been seen with a firearm, reasonable suspicion existed, and the probation search of Allen's home was reasonable within the meaning of the Fourth Amendment.") (citing *United States v. Lewis*, 71 F.3d 358, 362 (10th Cir.1995) (confidential informant's tip, relayed to parole agent by police held sufficient to establish reasonable suspicion to support search of parolee's residence); *State v. Martinez*, 811 P.2d 205, 210 (Utah Ct.App.

1991) (reasonable suspicion to search probationer's apartment found where sheriff's deputy contacted defendant's probation officer concerning an alleged assault committed by defendant)); *Purdy*, 708 N.E.2d at 24 (holding that search was a valid probation search where police officer accompanied probation officer on a routine sweep of probationers home and searched defendant's home only after he smelled marijuana smoke).

### B. *Consent*

■ The State argues, separate from any issue related to the special needs of the State, that Zimmerman provided Skaggs and the troopers with consent to search Nowling's bedroom and that therefore the search did not run afoul of the Fourth Amendment. The State argues that, after Zimmerman allowed Skaggs and the troopers into the home, "[w]hen Skaggs asked where Nowling lived, Zimmerman stated it was upstairs and directed the officers to the staircase." Appellee's Brief at 6. The State argues, without citation to the record, that Skaggs "simply asked the home owner, Zimmerman, where Nowling was staying, and without showing any protest, and without any evidence of being coerced, Zimmerman showed them to Nowling's room." *Id.* The State argues that "[w]hen Skaggs and [Trooper Katrina Smith] entered Nowling's room, all of the evidence that really matters to this appeal—given Nowling's conviction—was seen in plain view," and that "[a]t that point, probable cause attached." *Id.* at 7–8.

Nowling argues in his reply brief that "whether or not [Zimmerman] had actual or apparent authority to consent to search, [he] did not actually consent to a search of the room." Appellant's Reply Brief at 2–3. Nowling argues that "the officers did not ask permission to search Nowling's room,"

and that the State did not prove that Zimmerman had actual or apparent authority to consent to the search. *Id.* at 3. Nowling asserts that because there was not valid consent to enter and search the bedroom, the contraband seized in plain view therein must be suppressed.

■ A valid consent to search is an exception to the warrant requirement unless it is procured by fraud, duress, fear, or intimidation, or where it is "merely a submission to the supremacy of the law." *Melton v. State,* 705 N.E.2d 564, 567 (Ind. Ct.App.1999). "When the State seeks to rely upon consent to justify a warrantless search, it has the burden of proving that the consent was, in fact, freely and voluntarily given." *Lyons v. State,* 735 N.E.2d 1179, 1185 (Ind.Ct.App.2000), *trans. denied.* In determining whether consent was valid, we must consider the totality of the circumstances. *Melton,* 705 N.E.2d at 567; *see also State v. Jorgensen,* 526 N.E.2d 1004, 1006 (Ind.Ct.App.1988) ("The Supreme Court ... declined to place a burden on the State to show that it had informed the person of his right to refuse consent, or that the person knew he could refuse consent. Rather, whether valid consent was given is a question of fact to be determined from all the circumstances existing at the time of the search.") (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 248–249, 93 S.Ct. 2041, 2058–2059, 36 L.Ed.2d 854 (1973)). Express consent is not a requirement for a valid consent search, and "[t]he circumstances surrounding the search may demonstrate that the party involved implicitly gave consent, by word or deed." *Melton,* 705 N.E.2d at 567–568 (quoting *Jorgensen,* 526 N.E.2d at 1006). However, "the failure to protest a search does not, in itself, constitute consent." *Id.* at 568 n. 1.

As noted in *Jorgensen,* the Indiana Supreme Court has held that a third party's "presence, acquiescence, and assistance in the search" demonstrated consent to search despite the fact that the record did not demonstrate whether the Trooper had specifically asked to search the home or whether the third party had agreed to the search. 526 N.E.2d at 1006 (quoting *Harper v. State,* 474 N.E.2d 508, 512 (Ind. 1985)). However, courts have determined searches to be invalid "where the State has shown no more than the defendant's mere acquiescence to a claim of lawful authority." *Id.* at 1007 (citing *Bumper v. North Carolina,* 391 U.S. 543, 548–549, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968)) (quotations omitted).

Here, the record reveals that Skaggs and the troopers arrived at Nowling's residence and were greeted by Zimmerman who asked them "to come in." Transcript at 120. Skaggs testified that, upon learning that Nowling was not home, he asked Zimmerman "where [Nowling's] bedroom was" and Zimmerman answered by stating that "it was upstairs" and directing Skaggs and the troopers "to the staircase," and Skaggs subsequently proceeded upstairs with Trooper Katrina Smith. *Id.* at 56, 138. It is uncontested that Zimmerman was not asked whether he would agree to a search of the residence or of Nowling's bedroom in particular. Also, there is no evidence in the record that Zimmerman assisted Skaggs and the troopers in their search. Accordingly, we find that Zimmerman at most merely acquiesced to Skaggs's claim of authority to search, and conclude that, regardless of whether Zimmerman possessed actual or apparent authority to offer his consent, the State has not shown that Zimmerman consented to the search of Nowling's bedroom. *See Jorgensen,* 526 N.E.2d at 1007 (holding that the "State had not met its burden of showing that [a third party] had freely and voluntarily given her consent, free of du-

ress or coercion" during search in which the police officer's "announced intention to search the area and collect evidence" was met by the third party with "acquiescence").

■ However, our review does not end here as the State also submits that the admission of this evidence was harmless at most because "Skaggs testified that Nowling, in court and under oath, [admitted] to his probation violation, [and] admitted that on February 26, 2010, he possessed drug paraphernalia." Appellee's Brief at 14. The State argues that Nowling's conviction for possession of methamphetamine was "proven independently of all the evidence he sought to suppress, and proven independently of all the statements he sought to suppress." *Id.* at 15. The State argues that therefore, "even assuming the trial court had granted Nowling's motions to suppress, or sustained his objections at trial, the exact same result would have attached." *Id.* Nowling does not respond to the State's argument on this issue in his reply brief; however, he does assert in his appellant's brief that "[t]he State has no evidence against [Nowling] other than the fruits of the illegal search." Appellant's Brief at 17.

■ "When inadmissible evidence has been presented to the jury, reversal of a conviction is required only if the erroneous admission prejudiced the defendant's substantial rights." *Williams v. State,* 741 N.E.2d 1209, 1213 (Ind.2001) (citing *Dockery v. State,* 644 N.E.2d 573, 580 (Ind.

1994)). "In determining whether error in the introduction of evidence warrants reversal, the court must assess the probable impact of the evidence on the jury." *Id.* "The improper admission of evidence is harmless error when the conviction is supported by such substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction." *Lafayette v. State,* 917 N.E.2d 660, 668 (Ind.2009).

■ At trial, the State, in advance of recalling Skaggs, noted that the purpose of recalling him was to introduce evidence that Nowling "was under oath and admitted to possession of paraphernalia." Transcript at 221. The court asked Nowling's counsel if there was "[a]nything you want to say about that," and Nowling's counsel replied: "No, Judge." *Id.* Skaggs was then called to the stand and testified, without objection from Nowling's counsel, that Nowling admitted at his probation revocation hearing that he possessed the paraphernalia seized on February 26, 2010. Also, at trial William Bowles testified, without objection from Nowling, that the paraphernalia contained methamphetamine, and a certificate of analysis signed by Bowles indicating that the pen hull contained methamphetamine was similarly admitted without objection. Thus, this independent, unchallenged evidence is enough to sustain Nowling's conviction for possession of methamphetamine as a class D felony, and accordingly we must affirm Nowling's conviction.[4] *Hollen v. State,* 740

---

4. Nowling also challenges the admission of his previous testimony from the probation revocation hearing by arguing that "before a confession may be admissible, the State must provide corroborating evidence of the *corpus delicti,*" and that since the pen hull "was the product of an illegal search, it may not be used by the State to show evidence of *corpus delicti.*'" Appellant's Brief at 16. However,

we note that because Nowling failed to raise the issue at trial, he has waived this issue on appeal. *Finchum v. State,* 463 N.E.2d 304, 306 (Ind.Ct.App.1984) ("Finchum raised no issue at trial relative to the *corpus delicti,* and such failure could result in a waiver of that issue.") (citing *Spright v. State,* 254 Ind. 420, 425, 260 N.E.2d 770, 772–773 (1970) ("Appellant's argument that the trial court erred in

N.E.2d 149, 157 (Ind.Ct.App.2000) (holding that admission of evidence was harmless error because of independent testimonial evidence of the defendant's guilt).[5]

To the extent that Nowling asserts that this evidence constitutes the "fruit of the poisonous tree," we disagree. "The 'fruit of the poisonous tree' doctrine is one facet of the exclusionary rule of evidence which bars the admissibility in a criminal proceeding of evidence obtained in the course of unlawful *searches and seizures.*" *Morales v. State*, 749 N.E.2d 1260, 1268 (Ind.Ct.App.2001). "When applied, the [fruit of the poisonous tree] doctrine operates to bar not only evidence directly obtained, but also evidence derivatively gained as a result of information learned or leads obtained during an unlawful search or seizure." *Adams v. State*, 762 N.E.2d 737, 745 (Ind.2002). "To invoke the doctrine, a defendant must show that challenged evidence was obtained by the State in violation of the defendant's Fourth Amendment rights." *Morales*, 749 N.E.2d at 1268.

Nowling makes no argument that his Fourth Amendment rights were violated when he made incriminating statements at his August 16, 2010 probation revocation hearing. Indeed, we note that at that proceeding Nowling waived his *Fifth Amendment* right against self-incrimination when he chose to testify regarding the incident which was the focus of a pending criminal charge and made the statements at issue. *See McKnight v. State*, 787 N.E.2d 888, 891 (Ind.Ct.App.2003) (noting that, at a probation revocation hearing, "a probationer is protected by the Fifth Amendment from answering any questions where those answers could be used against him or her in any subsequent criminal proceedings"); *cf. State v. Cass*, 635 N.E.2d 225, 227 (Ind.Ct.App.1994) (holding that where a defendant has already been convicted of the crime at issue, any question asked by the State merely serves to identify the defendant as the perpetrator of that crime; thus, the defendant is not entitled to Fifth Amendment rights), *trans. denied*. Accordingly, we conclude that the fruit of the poisonous tree doctrine does not apply to exclude Nowling's statements made at his probation revocation hearing.

For the foregoing reasons, we affirm Nowling's conviction for possession of methamphetamine as a class D felony.

Affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.

---

admitting into evidence his alleged confession prior to the proof of the corpus delicti of the crime cannot now be considered by this Court. Appellant did not object to the testimony concerning the admission at the trial, did not allege said error in his motion for new trial, and now raises such argument for the first time on appeal.")).

We also note that Nowling does not make argument in his briefs regarding fundamental error.

5. Because we hold that Nowling's conviction must stand based upon independent evidence submitted without objection at trial, we need not address the issue of whether the trial court erred in admitting evidence of Nowling's statements made to his probation officer.