**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**NEIL L. WEISMAN**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAMIEN TOWNSEND, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A05-1109-CR-471 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Jane Woodward Miller, Judge
Cause No. 71D03-1011-FB-163

**May 29, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Damien Townsend appeals his conviction for burglary as a class B felony.[1] Townsend raises one issue, which we revise and restate as whether the trial court abused its discretion by admitting evidence obtained from an investigatory stop. We affirm.

The relevant facts follow. On the morning of November 22, 2010, as Molly Nichols returned to her home from driving her children to school, she observed a man whom she had never seen before attempting to enter the front door of her home at the corner of Donald and Dale streets in South Bend, Indiana. Nichols thought perhaps that the man "had keys or something." Transcript at 83. The man asked Nichols for someone whose name she did not recognize and who did not live at the residence. The man then walked away, walking south towards Ewing Avenue. Because the man had not been knocking at the door, Nichols did not believe his story and she called the police within minutes to report the incident. Nichols provided a detailed description to the police as "a male of mixed race with a bald shaved head, a goatee and a black hoodie on." Id. at 104.

A radio dispatch went out requesting officers to "check the area for a male of mixed race, shaved head, goatee, black hoodie, woman said on her property, couldn't explain why there, no further." Id. at 122. South Bend Police Officer James Dennin responded to the dispatch and searched the area for a person matching the description provided by Nichols as well as information that came up on his patrol car computer containing Nichols's address and phone number and stating that the individual "was at caller's door when she arrived home from taking kids to school, last seen on foot down Dale towards Ewing." Id. at 131. Within about ten or fifteen minutes, Officer Dennin

---

[1] Ind. Code § 35-43-2-1 (2004).

came upon Townsend, who matched the description, at the corner of Donald and High streets, which is about three blocks from Nichols's residence. Officer Dennin exited his patrol car and approached Townsend on foot. Officer Dennin asked Townsend what his name was and what he was doing in the area, and Townsend provided his name and stated that he was walking home from a friend's house. Officer Dennin asked Townsend if he had been at a house on Donald Street, and Townsend replied that he was there looking for a friend. The officer then asked if he had identification, and Townsend responded that he did not.

Officer Dennin observed that Townsend was carrying "a shoulder bag with a computer case over his shoulder," which the officer found suspicious because there was no mention of a bag in the description from dispatch. Id. at 107. He asked Townsend what it was, and Townsend replied that it was his computer and that he bought it from a friend a couple of days earlier. Officer Dennin noticed a tag on the bag which bore the name Judith Hillers and the address "730 East Altgeld" written on it, which was only a few blocks from where they were. Id. at 109. In order to read the tag, Officer Dennin picked up the tag and may have had to turn it over.

Officer Dennin decided to drive Townsend to the address listed on the tag, but before doing so he patted Townsend down for weapons and as a result discovered a digital camera in the pocket of his hoodie. Without handcuffing him, Officer Dennin placed Townsend in the back seat of his vehicle, placed the computer case and the camera in the front seat, and proceeded to the Altgeld Street address. Upon their arrival, Officer Dennin noticed fresh pry marks by the door, although the door was locked and secure.

3

The residents were not home, and a neighbor provided Officer Dennin and Corporal Kevin Gibbons, who was also on the scene, with the phone number of Robert Hillers, and Corporal Gibbons contacted Robert who stated that he would return home. While the officers waited for Hillers to return, Townsend rolled down the window of the patrol car and escaped but was eventually recaptured.

When Robert returned home, he informed the officers that the pry marks had not been present when he left in the morning. Inside the home, Robert noted for the officers that the lock on a filing cabinet located in the bedroom had been forced open, a digital camera was missing from the bedroom, and a computer and case were missing from the living room. The officers showed Robert the camera and computer case recovered from Townsend and he identified them as his.

On November 24, 2010, the State charged Townsend with burglary as a class B felony. On March 17, 2011, Townsend filed a motion to suppress the evidence obtained during the stop and search. On June 3, 2011, the court held a suppression hearing in which the State argued that the encounter between Officer Dennin and Townsend was an investigatory stop based upon reasonable suspicion, and the court ultimately denied the motion.

On July 19, 2011, a jury trial commenced in which evidence consistent with the foregoing was presented. At the outset, Townsend reasserted his motion to suppress, and he also objected to Officer Dennin's testimony regarding the stop and the search. Robert testified that he had never met Townsend and did not give Townsend permission to enter his home or take his belongings. Corporal Gibbons testified that, at a normal pace, it

4

takes approximately five minutes to walk from Nichols's house to the Hillers' house and about three minutes to walk from the Hillers' house to the location where Officer Dennin encountered Townsend. On July 20, 2011, the jury found Townsend guilty as charged. On August 18, 2011, the court sentenced Townsend to twelve years with six years to be served through community corrections and six years suspended, with three years to be served on probation.

The issue is whether the trial court abused its discretion by admitting evidence obtained from an investigatory stop. The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for abuse of discretion. Wilson v. State, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances" before the court. Smith v. State, 754 N.E.2d 502, 504 (Ind. 2001). In making this determination, this court does not reweigh evidence and considers conflicting evidence in a light most favorable to the trial court's ruling. Cole v. State, 878 N.E.2d 882, 885 (Ind. Ct. App. 2007). However, we must also consider the uncontested evidence favorable to the defendant. Joyner v. State, 678 N.E.2d 386, 390 (Ind. 1997), reh'g denied. Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. Id. Further, this court considers evidence from the trial as well as evidence from the suppression hearing that is not in direct conflict with the trial evidence. Kelley v. State, 825 N.E.2d 420, 427 (Ind. Ct. App. 2005).

Townsend argues that the stop and search were illegal under: (A) the Fourth Amendment; and (B) Article 1, Section 11 of the Indiana Constitution.

A.    Fourth Amendment

We begin by addressing Townsend's Fourth Amendment claims. The Fourth Amendment to the United States Constitution provides, in pertinent part: "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. CONST. amend. IV. The Fourth Amendment's protection against unreasonable searches and seizures has been extended to the states through the Fourteenth Amendment. See Berry v. State, 704 N.E.2d 462, 464-465 (Ind. 1998).

Townsend challenges the propriety of: (1) the initial stop; and (2) the search.[2] We address each of Townsend's arguments separately.

1.    *The Stop*

As a general rule, the Fourth Amendment prohibits a warrantless search. Id. at 465. When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. Id. One of the recognized exceptions is the Terry investigatory stop. Carter v. State, 692 N.E.2d 464, 466 (Ind. Ct. App. 1997).

In Terry v. Ohio, the United States Supreme Court established the standard for determining the constitutionality of investigatory stops. 392 U.S. 1, 88 S. Ct. 1868 (1968). The Court ruled that the police may, without a warrant or probable cause, briefly

---

[2] Townsend does not challenge Officer Dennin's decision to transport him to the Hillers' home.

detain an individual for investigatory purposes if, based on specific and articulable facts, the officer has a reasonable suspicion of criminal activity. Id. at 27, 88 S. Ct. at 1883; see also Jackson v. State, 669 N.E.2d 744, 747 (Ind. Ct. App. 1996) ("In Terry, the Supreme Court held that 'where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot' the officer may briefly stop the suspicious person and make 'reasonable inquiries' to confirm or dispel those suspicions.") (quoting Terry, 392 U.S. at 30, 88 S. Ct. at 1884). Reasonable suspicion exists if the facts known to the officer at the moment of the stop, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. Powell v. State, 841 N.E.2d 1165, 1167 (Ind. Ct. App. 2006). In judging the reasonableness of investigatory stops, courts must strike "a balance between the public interest and the individual's right to personal security free from arbitrary interference by law [enforcement] officers." Carter, 692 N.E.2d at 466 (quoting Brown v. Texas, 443 U.S. 47, 50, 99 S. Ct. 2637, 2640 (1979)). When balancing these competing interests in different factual contexts, a central concern is "that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field." Id. (citing Brown, 443 U.S. at 51, 99 S. Ct. at 2640). Therefore, in order to pass constitutional muster, reasonable suspicion must be comprised of more than an officer's general "hunches" or unparticularized suspicions. Terry, 392 U.S. at 27, 88 S. Ct. at 1883. Whether an investigatory stop is justified is determined on a case by case basis. Williams v. State, 745 N.E.2d 241, 245 (Ind. Ct. App. 2001). In

7

making this determination, we consider the totality of the circumstances. Id. "Judicial interpretation of what constitutes 'reasonable suspicion' is fact-sensitive." Bridgewater v. State, 793 N.E.2d 1097, 1100 (Ind. Ct. App. 2003), trans. denied.

Townsend argues that "Officer Dennin never spoke directly with the caller and was looking for the individual based only on the dispatch and had no further information." Appellant's Brief at 10. Townsend argues that Officer Dennin observed someone matching the description and initiated a stop based upon the description, but he was not aware that a crime had been committed and was not investigating a crime. Townsend argues that Officer Dennin's stop was based solely "on an unparticularized dispatch" and thus he did not have a reasonable suspicion that criminal activity had occurred or was about to occur and was therefore unconstitutional under Terry. Id. at 11. Townsend emphasizes that, when Officer Dennin came upon him, Townsend was merely walking down a sidewalk with his hood down, not attempting to conceal his identity, and he did not turn or walk away and was cooperative. The State argues that the stop, in which Townsend was observed near the area of Nichols's home approximately fifteen to twenty minutes after the phone call in which Nichols reported that she observed a man closely matching Townsend's appearance at her front door without an explanation, was supported by reasonable suspicion.

The United States Supreme Court has observed that "wholly lawful conduct might justify the suspicion that criminal activity was afoot." U.S. v. Sokolow, 490 U.S. 1, 9, 109 S. Ct. 1581, 1586 (1989). The Court noted that "[i]ndeed, Terry itself involved 'a series of acts, each of them perhaps innocent' if viewed separately, 'but which taken

8

together warranted further investigation.'" Id. at 9-10, 109 S. Ct. at 1587 (quoting Terry, 392 U.S. at 22, 88 S. Ct. at 1881). The Court noted that "innocent behavior will frequently provide the basis for a showing of probable cause," that "[i]n making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts," and that this "principle applies equally well to the reasonable suspicion inquiry." Id. at 10, 109 S. Ct. at 1587 (quoting Illinois v. Gates, 462 U.S. 213, 243-244 n.13, 103 S. Ct. 2317, 2335 n.13 (1983), reh'g denied).

Here, the record reveals that Officer Dennin had reasonable suspicion to stop Townsend. In so holding, we note that Nichols identified herself to the 911 dispatch officer and was not an anonymous tipster. She identified herself as the owner of the home she observed Townsend attempt to enter and provided both her address and phone number. She provided a detailed description of the individual she observed at her door which Townsend, who Officer Dennin encountered a mere few blocks from Nichols's residence, matched.[3] See State v. Renzulli, 958 N.E.2d 1143, 1149 (Ind. 2011) (noting that officers had reasonable suspicion to initiate an investigatory stop based on a phone call from "an identified informant or concerned citizen" and not "an anonymous tip," in which the caller identified himself and provided a detailed description of a vehicle); State v. Eichholtz, 752 N.E.2d 163, 166-167 (Ind. Ct. App. 2001) (noting that, unlike in cases involving anonymous tips, here the informant "willingly informed the 9-1-1 operator of

---

[3] To the extent that the State argues that the initial encounter between Officer Dennin and Townsend was consensual and thus did not implicate the Fourth Amendment, we need not address this argument because we conclude that the stop was supported by reasonable suspicion.

his name and the description of his car," and that as such the caller "could be held legally responsible if [the police] investigation indicated that [the caller] filed a false police report").

2. *The Search*

Townsend next challenges the propriety of the pat down search and search of the computer bag. An "exception to the warrant requirement is: when a police officer makes a <u>Terry</u> stop, if he has reasonable fear of danger, he may conduct a carefully limited search of the outer clothing of the suspect in an attempt to discover weapons that might be used to harm him." <u>Williams v. State</u>, 754 N.E.2d 584, 588 (Ind. Ct. App. 2001), <u>trans</u>. <u>denied</u>. The United States Supreme Court, in <u>Terry</u>, explained that police officers may employ investigative techniques short of arrest on less than probable cause without violating Fourth Amendment interests. <u>Wilson v. State</u>, 745 N.E.2d 789, 792 (Ind. 2001). The principal issue is whether the police action in question was reasonable under all the circumstances. <u>Id.</u> (citing <u>Pennsylvania v. Mimms</u>, 434 U.S. 106, 108-09, 98 S. Ct. 330, 332 (1977)).

The Indiana Supreme Court has noted that <u>Terry</u> permits a:

> reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

<u>Id.</u> (citing <u>Terry</u>, 392 U.S. at 27, 88 S. Ct. at 1883). An officer's authority to conduct a pat down search is dependent upon the nature and extent of his particularized concern for

his safety. Id. "[A]n individual stopped may not be frisked or patted down for weapons, unless the officer holds a reasonable belief that the particular individual is armed and dangerous." Swanson v. State, 730 N.E.2d 205, 210 (Ind. Ct. App. 2000) (quoting State v. Pease, 531 N.E.2d 1207, 1211 (Ind. Ct. App. 1988)), trans. denied.

Townsend argues that Officer Dennin did not identify particularized facts underlying a belief that he feared for his safety to justify a pat down search under Terry. Townsend also argues that because the stop and search were unconstitutional, the evidence discovered by the search is inadmissible as the "fruit of the poisonous tree." Appellant's Brief at 12. Specifically regarding the computer bag, Townsend argues that the State's assertion at the suppression hearing that he did not have standing to contest the search was incorrect because "society would find it reasonable that a person walking down the street carrying a computer bag, briefcase, purse, or any other item has an expectation of privacy in the item possessed sufficient to invoke the protections of the Fourth Amendment . . . ." Id. at 20.

We begin by addressing an issue raised by the State, namely, whether Townsend had standing to challenge the search of the computer bag, in which Officer Dennin observed the Hillers' address on an identification tag attached to the bag and testified that he may have turned the tag over in order to do so. As noted by the State, "[i]llegally seized evidence is excludable only if the person complaining has standing to challenge its admissibility." Barnes v. State, 269 Ind. 76, 79, 378 N.E.2d 839, 842 (1978). "One who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of

11

his Fourth Amendment rights infringed." Covelli v. State, 579 N.E.2d 466, 472 (Ind. Ct. App. 1991) (citing Rakas v. Illinois, 439 U.S. 128, 134, 99 S. Ct. 421, 425 (1978), reh'g denied), trans. denied. "Only those defendants whose Fourth Amendment rights have been violated are permitted to benefit from the protections of the exclusionary rule." Id. "It is not enough that the defendant is the 'target' of the police search, if he has no legitimate expectation of privacy in the searched premises or property." Id.; see also Buza v. State, 529 N.E.2d 334, 338 (Ind. 1988) ("It is well-founded that the privilege against unlawful search and seizure is personal, and cannot be asserted to challenge the search or seizure of another person's property."); Sisk v. State, 785 N.E.2d 271, 274 (Ind. Ct. App. 2003) (noting that in order to establish a violation of Fourth Amendment rights, a defendant must demonstrate that he personally has an expectation of privacy in the place searched and that his expectation is reasonable).

In Covelli, defendant Covelli, on direct appeal from a conviction for dealing in cocaine as a class A felony, raised a claim of ineffective assistance of counsel for failure to raise a Fourth Amendment objection to the admission of cocaine and paraphernalia which were seized by the police. 579 N.E.2d at 469. The relevant facts were that Covelli and his girlfriend were returning to their hotel room which was being surveilled by police pursuant to a tip by the hotel management. Id. Both Covelli and his girlfriend were carrying several bags when they were returning to the room, and the police searched the bags and discovered approximately 205 grams of uncut cocaine which led to their arrests. Id. On appeal, this court addressed the "threshold question" of "whether Covelli has standing to raise the illegality of the search." Id. at 472. The court noted that "there is at

12

least some evidence in the record that the bags were commonly owned" and that "[a]s such, Covelli would have a legitimate interest of privacy in the bags." Id.

Here, the record reveals that Townsend did not own the computer bag and indeed, that he had recently stolen the bag from the Hillers' residence. Therefore, Townsend did not have standing to challenge the admission of the stolen property into evidence as he had no legitimate expectation of privacy or interest in the stolen property. See also Chappel v. State, 591 N.E.2d 1011, 1016 (Ind. 1992) (holding that a defendant has no standing to object to the search of another person's property).

As noted above, based upon Officer Dennin's observation of the Hillers' address on the tag and his knowledge that a man matching Townsend's appearance had recently been observed at the front door of another address without explanation, Officer Dennin decided to drive to the address listed, which was only a few blocks away. Before placing Townsend in his vehicle, however, Officer Dennin conducted a pat down for weapons whereupon he discovered a digital camera.[4] Based upon the record, we conclude that a

---

[4] As the State observes in its brief, at the suppression hearing the evidence presented was "slightly more ambiguous with respect to whether the pat-down occurred before or after the officer looked at the computer tag." Appellee's Brief at 13 n.1. However, to the extent that this testimony conflicts with what was presented at trial, we note that the evidence presented at trial revealed that Officer Dennin observed the computer bag, found the presence of the bag suspicious because it was not mentioned in the description provided by Nichols, observed the address which was not Townsend's address on the tag, and searched Townsend after making the decision to drive to the address found on the tag.

Moreover, we note that even if the search of Townsend occurred prior to Officer Dennin's decision to transport Townsend to the Altgeld address, as argued by the State "[t]he discovery of the digital camera was largely incidental to this whole investigation, and everything would have proceeded exactly the same even if it had not been discovered." Appellee's Brief at 18. The State notes that "[w]holly apart from the pat-down, Officer Dennin would have looked at the identification tag . . . and would have seen the information," that "he would have gone to the Altgeld address and checked with the owner to determine whether [Townsend] was telling the truth that the computer had been given to him," that "he would have discovered the pry marks," that "Hillers would have confirmed that his wife's

13

reasonably prudent person in these circumstances would be warranted in believing that his or her safety or that of others was in danger. See Hailey v. State, 521 N.E.2d 1318, 1320 (Ind. 1988) (holding that the officer was justified in conducting a search of the defendant for his own safety where the officer knew that the defendant was an identified suspect in a burglary investigation).[5]

Finally, to the extent that Townsend asserts that the evidence recovered by the search or patdown constitutes the "fruit of the poisonous tree," we disagree. "The 'fruit of the poisonous tree' doctrine is one facet of the exclusionary rule of evidence which bars the admissibility in a criminal proceeding of evidence obtained in the course of unlawful searches and seizures." Nowling v. State, 955 N.E.2d 854, 864 (Ind. Ct. App.

---

computer was missing" and "would have identified the computer found in [Townsend's] possession as the one stolen from their house." Id. Also, "once Hillers confirmed the taking of his computer, [Townsend] would have been arrested, and the digital camera would have been discovered in the search incident to that arrest." Id. Thus, the admission of the camera was harmless at most. See Fleener v. State, 656 N.E.2d 1140, 1141 (Ind. 1995) ("Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party.") (citations omitted).

[5] To the extent that Townsend argues that the search was unconstitutional because it concerned Townsend's identification, we note that the United States Supreme Court has observed:

Our decisions make clear that questions concerning a suspect's identity are a routine and accepted part of many Terry stops. See United States v. Hensley, 469 U.S. 221, 229, 105 S. Ct. 675, 83 L.Ed.2d 604 (1985) ("[T]he ability to briefly stop [a suspect], ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice"); Hayes v. Florida, 470 U.S. 811, 816, 105 S. Ct. 1643, 84 L.Ed.2d 705 (1985) ("[I]f there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information"); Adams v. Williams, 407 U.S. 143, 146, 92 S. Ct. 1921, 32 L.Ed.2d 612 (1972) ("A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time").

Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cnty., 542 U.S. 177, 186, 124 S. Ct. 2451, 2458 (2004), reh'g denied.

14

2011) (quoting Morales v. State, 749 N.E.2d 1260, 1268 (Ind. Ct. App. 2001)), clarified on reh'g, 961 N.E.2d 34 (Ind. Ct. App. 2012), trans. denied.  "When applied, the [fruit of the poisonous tree] doctrine operates to bar not only evidence directly obtained, but also evidence derivatively gained as a result of information learned or leads obtained during an unlawful search or seizure."  Id. (quoting Adams v. State, 762 N.E.2d 737, 745 (Ind. 2002)). "To invoke the doctrine, a defendant must show that challenged evidence was obtained by the State in violation of the defendant's Fourth Amendment rights."  Id. (quoting Morales, 749 N.E.2d at 1268).  Here, because we conclude that there was no Fourth Amendment violation, the evidence cannot be considered the fruit of a poisonous tree.

B.    Indiana Constitution

Townsend also cites to Article 1, Section 11 of the Indiana Constitution, which provides for the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure . . . ."  Despite the fact that the text of Article 1, Section 11 is nearly identical to the Fourth Amendment, Indiana courts interpret and apply it "independently from federal Fourth Amendment jurisprudence." Mitchell v. State, 745 N.E.2d 775, 786 (Ind. 2001).  In conducting analysis under this provision, we focus on whether the officer's conduct "was reasonable in light of the totality of the circumstances."  Holder v. State, 847 N.E.2d 930, 940 (Ind. 2006).  In making this determination, we balance: (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion the method of the

15

search or seizure imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs.  Id.

Here, the record reveals that Officer Dennin received a dispatch and information on his patrol car computer providing a detailed description of a man that was seen at the front door of an identified caller, and he began to search the area for someone matching the description.  Officer Dennin came upon Townsend, who matched the description, a few blocks from where the call originated from, and he approached Townsend on foot and without a weapon drawn.  Upon encountering Townsend and confirming that he had been at Nichols's residence, Officer Dennin noticed that he was carrying a bag over his shoulder and found this to be suspicious because there was no mention of a bag in the description from dispatch.  He asked Townsend what it was to which Townsend replied that it was his computer and that he had bought it from a friend a couple of days earlier. Officer Dennin then observed a tag hanging from the bag which had the name Judith Hillers and the address 730 East Altgeld displayed, which was only a few blocks from where they were, and Officer Dennin decided to drive to the address with Townsend to confirm his story.  Before doing so, Officer Dennin patted Townsend down for weapons and discovered a digital camera.  Under the circumstances, we conclude that Officer Dennin's pat down search of Townsend and the act of turning the tag on the computer bag did not violate Townsend's rights under Article 1, Section 11 of the Indiana Constitution.

In summary, we conclude that the trial court did not abuse its discretion in admitting the evidence challenged by Townsend under the Fourth Amendment or Article 1, Section 11 of the Indiana Constitution.

For the foregoing reasons, we affirm Townsend's conviction for burglary as a class B felony.

Affirmed.

BAKER, J., and KIRSCH, J., concur.